DON F. LIVORNESE (SBN 125,934)
dlivornese@livorneselawgroup.com
**LIVORNESE LAW GROUP, LLC**
1500 Rosecrans Avenue, Suite 500
Manhattan Beach, CA 90266
Telephone:  424.247.9945
Facsimile:   424.247.9946

CHRISTOPHER L. KELLEY (SBN 166,608)
kelleyc@howrey.com
**HOWREY LLP**
1950 University Avenue, 4th Floor
East Palo Alto, CA 94303
Telephone:  650.798.3663
Facsimile:   650.798.3600

Attorneys for Declaratory Relief Plaintiffs
KYOCERA CORPORATION and
KYOCERA COMMUNICATIONS, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYOCERA CORPORATION and KYOCERA COMMUNICATIONS, INC., <br><br> Plaintiffs, <br> v. <br><br> NORMAN IP HOLDINGS LLC., <br><br> Defendant. | CASE NO.:  3:10-cv-836-JM (BGS). <br><br> **FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF OF NON-INFRINGEMENT AND INVALIDITY OF U.S. PATENT NOS. 5,592,555, 5,502,689, 5,530,597 AND 5,608,873** <br><br> **DEMAND FOR JURY TRIAL** |

FIRST AMENDED COMPLAINT

Pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure, Plaintiffs Kyocera Corporation ("KC") and Kyocera Communications, Inc. ("KCI") (collectively, the "Kyocera Parties") hereby submit their First Amended Complaint for Declaratory Relief against Norman IP Holdings, LLC ("Norman") as follows:

## THE PARTIES

1. KC is a corporation organized and existing under the laws of Japan, with its principal place of business in Kyoto, Japan.

2. KCI is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 10300 Campus Point Dr., San Diego, CA 92121.  KCI is an indirect subsidiary of KC.

3. Upon information and belief, defendant Norman is a Texas limited liability company having a listed address of 100 E. Ferguson, Suite 816, First Place, Tyler, Texas 75702.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over the Kyocera Parties' declaratory judgment causes of action pursuant to 28 U.S.C. §§ 2201–2202, 1338, and 1331.  The controversy arises under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.* and relates to the invalidity and non-infringement of U.S. Patent Nos. 5,592,555 ("the '555 patent"), 5,502,689 ("the '689 patent"), 5,530,597 ("the '597 patent") and 5,608,873 ("the '873 patent") (collectively, "the Patents-in-Suit").  True and correct copies of the '555, '689, '597 and '873 patents are attached hereto as Exhibits 1-4, respectively.

5. A real, immediate, and justiciable controversy exists between the Kyocera Parties and Norman.  On information and belief, Norman is the present owner of the Patent-in-Suit, and in January 2010 acquired ownership of these patents from Saxon Innovations LLC ("Saxon").  After obtaining these patents, Norman has publicly vowed to continue the licensing strategy implemented by Saxon, which included suing the Kyocera Parties for infringement of the Patents-in-Suit, an action which is still pending in the Eastern District of Texas as of this filing, but for which Norman was not an original party.  Subsequent to the filing of the original Complaint in this action on April 21, 2010,

FIRST AMENDED COMPLAINT  -2-

Norman has attempted to joint itself as a plaintiff in the Texas action, and has asserted the additional '873 patent against the Kyocera Parties. There exists a substantial controversy between Norman and the Kyocera Parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

6. This Court has personal jurisdiction over Norman. On information and belief, Norman is a resident of Texas, but conducts business in this district and elsewhere in the state of California. Norman has established minimum contacts with the forum through a continued program of enforcing patents it acquired from Saxon against accused infringers in this district and in the state of California. In particular, on information and belief, Norman has directed or authorized RPX Corporation, a company with headquarters in San Francisco, California, to approach at least Sierra Wireless Inc. and Sierra Wireless America, Inc. regarding possible settlement of causes of action relating to the Patents-in-Suit.

7. Therefore, this Court's exercise of jurisdiction over Norman would not offend traditional notions of fair play and substantial justice.

8. Venue in this District is proper pursuant to 28 U.S.C. §§ 1391(b) - (c) and 1400.

## FACTUAL BACKGROUND

9. In the Eastern District of Texas, Case No. 6:09–cv–270 (LED), Saxon brought an action for patent infringement on June 17, 2009 against the Kyocera Parties, among others, charging them with infringement of the Patents-In-Suit. In the original Complaint, and in subsequent amended complaints filed as late as February 3, 2010, Saxon alleged that it was the owner by assignment of the original two Patents-in-Suit (the '555 and '689 patents).

10. On January 22, 2010, Saxon assigned the original two Patents-in-Suit, along with the '873 and nine other patents, to Norman. Attached hereto as Exhibit 5 is a true and correct copy of the assignment, recorded with the United States Patent and Trademark Office on February 4, 2010. The assignment conveyed to Norman "all right, title, and interest that exists today and may exist in the future in and to any and all of" the patents-in-suit. (Ex. 5 at 68). This assignment included title to "all causes of action (whether known or unknown or whether currently pending, filed, or otherwise) and other enforcement rights under, or on account of" the patents-in-suit "including, without limitation,

FIRST AMENDED COMPLAINT             -3-

all causes of action and other enforcement rights for (i) damages, (ii) injunctive relief, (iii) any other remedies of any kind for past, current, and future infringement, and (iv) all rights to collect royalties and other payments under or on account of" the Patents-in-Suit. (Ex. 5 at 69.)

11. On information and belief, on February 18, 2010, Altitude Capital Partners LLC ("Altitude"), the parent company of Saxon, issued a press release regarding the assignment to Norman, a true and correct copy of which is attached hereto as Exhibit 6. The press release indicated that Saxon "has sold its entire portfolio of one hundred eighty patents . . . to Norman IP Holdings LLC . . . and RPX Corporation." (Ex. 6 at 72.) The press release further stated:

> Prior to the sale, Saxon licensed its portfolio to many of the world's leading mobile handset manufacturers including LG Electronics Inc., HTC Corporation, Nokia Corporation, and Research in Motion Limited (RIM). . . .
>
> Norman IP will continue to pursue the strategy developed by Saxon, with Norman IP retaining the Saxon management team and owning ten of the most essential patents. . . . "We look forward to continuing the successful commercialization strategy implemented by Saxon," said Anthony Grillo, who formerly headed up licensing with Saxon and is now in a similar position with Norman IP. "We believe that this transaction and our numerous prior licenses demonstrate the significance of these patents and we look forward to continuing the licensing program . . . ." (Ex. 6 at 72.)

12. Thus, on information and belief, (i) Saxon assigned ten patents, including the Patents-in-Suit, to Norman; (ii) Norman acquired Saxon's management team; and (iii) Norman intends to use that management team to "continue to pursue the strategy developed by Saxon."

13. On information and belief, the Saxon "commercialization strategy" referenced by Mr. Grillo, the former Saxon head of licensing who is now in the same position with Norman, included filing multiple lawsuits in district court and the International Trade Commission for infringement of the referenced ten "essential" patents, including the Patents-in-Suit, in order to extract licensing fees in settlement of the litigation, including the suit against the Kyocera Parties.

14. Because Saxon sold its entire interest in the Patents-in-Suit, including all rights to past, present, and future lawsuits against the Kyocera Parties, Saxon has no more interest, and no more standing under Article III of the Constitution, in the Texas cause of action against the Kyocera Parties.

FIRST AMENDED COMPLAINT                -4-

15. Saxon previously engaged in a coordinated effort of suing numerous potential licensees for infringement in order to extract licensing fees, including suing the Kyocera Parties for infringement of the original two Patents-In-Suit. After Saxon assigned "all causes of action (whether known or unknown or whether currently pending, filed, or otherwise)" in the Patents-in-Suit to Norman on January 22, 2010, the management team at Saxon responsible for implementing the strategy of suing potential licensees (including the Kyocera Parties) assumed the same position at Norman and is now pledging to continue the same activities at Norman. As of the filing of the original Complaint, it was therefore inherently reasonable for the Kyocera Parties to assume that Norman intended to bring causes of action against them for infringement of the original Patents-in-Suit.

16. Therefore, based upon Norman's comments in the February 18 press release, and Saxon's past litigation history, the Kyocera Parties believed, as of the filing of the original Complaint, that they were in imminent danger that Norman would bring causes of action against them for infringement of the Patents-in-Suit, either by seeking to join the existing litigation in Texas, or by filing a separate lawsuit. The reasonableness of this belief was conclusively confirmed when, on April 26, 2010, Saxon filed a motion in the Texas litigation to substitute Norman as a party pursuant to Fed. R. Civ. P. 25(c), and when on May 4, 2010, Norman attempted to join with Saxon in the Texas litigation by listing itself as a plaintiff in a Fourth Amended Complaint which also included a claim for infringement of the '597 and '873 patents.

17. On information and belief, on January 29, 2010, Norman entered into a security agreement with RPX Corporation ("RPX"), who according to Saxon is the buyer of the majority of Saxon's patents. (Ex. 6 at 72.) Part of this agreement between Norman and RPX was recorded in the United States Patent and Trademark Office, a true and correct copy of which is attached as Exhibit 7.

18. On information and belief, RPX is a corporation headquartered in San Francisco, California. (Ex. 7 at 74).

19. On information and belief, the agreement between Norman and RPX grants to RPX a security interest in the Patents-in-Suit, and the right to approach potential licensees to the Patents-in-Suit in the state of California to seek potential terms for licensing the Patents-in-Suit, either on behalf

of Norman or under a license from Norman, or by virtue of RPX's security interest in the Patents-in-Suit.

20. On information and belief, representatives from RPX approached Sierra Wireless, Inc. and Sierra Wireless America, Inc. during the week of April 5, 2010 to discuss potential licensing terms concerning the Patents-in-Suit now owned by Norman, as well as the larger portfolio of patents granted by Saxon to RPX.

## COUNT I:

## DECLARATORY RELIEF—THE '555 PATENT

21. The Kyocera Parties incorporate by reference each and every allegation set forth in paragraphs 1 to 20 as if fully set forth herein.

22. Upon information and belief, the Kyocera Parties have not infringed and do not infringe the '555 patent literally, under the doctrine of equivalents, directly, contributorily, by inducement, or in any other manner.

23. Upon information and belief, one or more of the claims of the '555 patent are invalid for failing to comply with the conditions and requirements for patentability as set forth in the United States Patent Laws, Title 35 U.S.C., including specifically §§ 101, 102, 103 and/or 112 and the rules, regulations, and laws pertaining thereto.

24. Accordingly, the Kyocera Parties seek a declaratory judgment pursuant to 28 U.S.C. §§ 2201–2202 that the '555 patent is invalid and not infringed by the Kyocera Parties.

## COUNT II:

## DECLARATORY RELIEF—THE '689 PATENT

25. The Kyocera Parties incorporate by reference each and every allegation set forth in paragraphs 1 to 24 as if fully set forth herein.

FIRST AMENDED COMPLAINT -6-

26. Upon information and belief, the Kyocera Parties have not infringed and do not infringe the '689 patent literally, under the doctrine of equivalents, directly, contributorily, by inducement, or in any other manner.

27. Upon information and belief, one or more of the claims of the '689 patent are invalid for failing to comply with the conditions and requirements for patentability as set forth in the United States Patent Laws, Title 35 U.S.C., including specifically §§ 101, 102, 103 and/or 112 and the rules, regulations, and laws pertaining thereto.

28. Accordingly, the Kyocera Parties seek a declaratory judgment pursuant to 28 U.S.C. §§ 2201–2202 that the '689 patent is invalid and not infringed by the Kyocera Parties.

## COUNT III:

## DECLARATORY RELIEF—THE '597 PATENT

29. The Kyocera Parties incorporate by reference each and every allegation set forth in paragraphs 1 to 28 as if fully set forth herein.

30. Upon information and belief, the Kyocera Parties have not infringed and do not infringe the '597 patent literally, under the doctrine of equivalents, directly, contributorily, by inducement, or in any other manner.

31. Upon information and belief, one or more of the claims of the '597 patent are invalid for failing to comply with the conditions and requirements for patentability as set forth in the United States Patent Laws, Title 35 U.S.C., including specifically §§ 101, 102, 103 and/or 112 and the rules, regulations, and laws pertaining thereto.

32. Accordingly, the Kyocera Parties seek a declaratory judgment pursuant to 28 U.S.C. §§ 2201–2202 that the '597 patent is invalid and not infringed by the Kyocera Parties.

## COUNT IV:

## DECLARATORY RELIEF—THE '873 PATENT

33. The Kyocera Parties incorporate by reference each and every allegation set forth in paragraphs 1 to 32 as if fully set forth herein.

FIRST AMENDED COMPLAINT                -7-

34. Upon information and belief, the Kyocera Parties have not infringed and do not infringe the '873 patent literally, under the doctrine of equivalents, directly, contributorily, by inducement, or in any other manner.

35. Upon information and belief, one or more of the claims of the '873 patent are invalid for failing to comply with the conditions and requirements for patentability as set forth in the United States Patent Laws, Title 35 U.S.C., including specifically §§ 101, 102, 103 and/or 112 and the rules, regulations, and laws pertaining thereto.

36. Accordingly, the Kyocera Parties seek a declaratory judgment pursuant to 28 U.S.C. §§ 2201–2202 that the '873 patent is invalid and not infringed by the Kyocera Parties.

## PRAYER FOR RELIEF

WHEREFORE, the Kyocera Parties pray for the following relief:

A. A judgment for the Kyocera Parties against Norman;

B. An order declaring that the Kyocera Parties do not infringe, and have not infringed, the '555, '689, 597 and '873 patents.

C. An order declaring that the '555, '689, '597 and '873 patents are invalid;

C. A judgment that this is an exceptional case pursuant to 35 U.S.C. § 285, and an award to the Kyocera Parties of their costs and reasonable attorneys' fees, together with interest, including prejudgment interest thereon; and

D. An order granting such other and further relief as may be deemed just and appropriate.

## DEMAND FOR A JURY TRIAL

In accordance with Federal Rule of Civil Procedure 38(b), the Kyocera Parties hereby demand a trial by jury on all issues so triable.

DATED:  May 14, 2010                    Respectfully submitted,

                                                      LIVORNESE LAW GROUP LLC


                                                      By:  /s/ *Don F. Livornese*
                                                          Don F. Livornese
                                                          dlivornese@livorneselawgroup.com
                                                          Attorneys for Plaintiffs
                                                          *KYOCERA CORPORATION and*
                                                          *KYOCERA COMMUNICATIONS, INC*.


## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on May 14, 2010 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

                                                          */s/ Don F. Livornese*
                                                          Don F. Livornese